Next case is Sociedad Espanola v. Blue Ridge X-Ray Company, 15-1102. Mr. Rademacher. Thank you, Your Honor. Just to make things clear, I will be referring to the plaintiff's esthetical instead of the long Spanish name at times. Melissa Wisp, if that's your choice. May it please the Court. We're here to address three errors by the district court, two of which are claim construction issues and the third is a procedural issue allowing late contentions in the case that are completely polar to contentions carried forth for years in the litigation. The two claim construction issues are, first, the term two insulated chambers and the second is magnetic cores. Now, when we look at the orders that are on appeal, that is the Markman order and the final summary judgment order where the court found inoperability and non-infringement and looking for where was the tipping point, where did the court get this wrong? And that's found in the Markman order. Although the final ruling of the Markman order for two insulated chambers doesn't come forth and say those must be sealed, that's what the court ultimately found in its summary judgment order. Where did the court go wrong? And that is by finding a disavowal in the Markman order, but there wasn't one. The court actually misquoted the file history. Instead of saying insulated chambers, which is what was said in the file history in distinguishing the serial reference, the court highlighted, bolded and italicized isolated chambers. That wasn't said. That was never said. That's the linchpin of the error. That's the tipping point of the error for a very long time. SEDACO was presenting a position to the court that insulated chambers means two chambers that are insulated from each other. You wanted the words electrically in there. Yes, exactly, Your Honor. And the court during the Markman order even said that has common sense appeal. The district court thought that that made sense just as one would when reading the specification. This patent is all about having voltage elements that have the immense voltage potential difference of up to 160 kilowatts. The idea is to prevent stray capacitance. It's electrical insulation. But right on the heels of the court saying that that has common sense appeal, that made sense. The court then got into disavowal, misquoted from the file history, and then concluded that therefore we have two different chambers that are then sealed. Now, I'm not sure if the court actually felt that way at the time of Markman. I think the court got it wrong in not adopting electrically insulated. But what happened, and in fact at the Markman ruling, the court said it's inconclusive whether that means totally sealed, whether it must require totally sealed. But years later, when defendants were allowed to bring forth an inoperability defense and change the theory of the case, that's when the court was left to come back to its Markman ruling and actually construe its own ruling. And when the court, that's what we believe happened, because when the court then looked at the disavowal, ends up adopting defendants' argument that insulated must mean isolated physically, sealed. Now, defendants have been careful to not say sealed. I told the court all the way back at the time of Markman that it sounded like his argument was getting towards saying these must be sealed. The court has been careful to not say sealed when getting rid of this case, but it's clear the court never could have found as it did. I can cite two portions of the summary judgment order if that would help, but the court would never find as it did, that is, inoperability and non-infringement if they were not sealed. How do we know this? Because what the court determined is that the cores must be something that all of the elements are isolated from each other. And finding that, therefore, according to the engineers, this won't work. Well, of course it won't work. You can't have a device that is called a transformer that doesn't have a magnetic core circling through. It just is impossible. Now, when I say magnetic core there, I did exactly one of the problems that's been in this case. Magnetic core has always been used in two different contexts by persons skilled in the art. It's often the short version of saying the full core ring. Back at a time before cores was a term in dispute in this case, back at the time of Markman, that's how everybody used the term. In fact, defendants had the very same understanding of cores in the claim as plaintiff. Very same. You look at figure one, the claims have the benefit of saying seven and seven prime. They have the benefit of numbers in the claim from the European practice. Seven and seven prime are shown as being two segments, two separate segments of a full core ring. We know from figure one that the chambers cannot be completely sealed as the court finally adopted. We know that the core ring passes between the two chambers. Figure one is said in the patent as being you take the cover off, you're looking down inside the housing. The specification is clear that all of the transformer elements are found inside the housing. There's no other way to look at it. But the court, taking defendant's argument that you can disavow a figure, the court then went on to find effectively that the chambers are sealed, that there's nothing that can pass between them. Therefore, this can't work and it's absurd. That is not. Is that the sole, referring to figure one, where we see the bar, what looks like a bar going across item six. Is that the sole area, place where the two chambers are joined, where the two cores are joined? No, Your Honor. Actually, the reason that sealed or completely physically isolated should not be read into the claim is looking at the specification and the claims in context overall. Claim one, specifically referencing seven and seven prime, and that's shown in figure one, is an example, a fairly blatant example of what the court ignored. But the court ignored that the claim should be read in context of the specification. That's electrical isolation, electrical insulation. And the gaps and voids that the court finally found that existed in the accused product and thereby found that there's no infringement is actually just a small gap around the outer edges. What's happened is the court has adopted something that's contrary to the specification teaching. Do you have any problems with the court's statement that a core must be connected all the way around for flux to flow because flux has to return on itself? How is it going to do that if we don't have a continuum? That's true. A core ring must have a continuum. That's true. The court conflates the use of the term core between core being a reference to an entire core ring. But in context, it's clear it's also referencing at times persons skilled in the art use core to talk about a relevant segment of the core ring. That is the segment that's associated with the carrier of either the negative or the positive voltage components. Is the problem here the fact that this is obviously a foreign originated patent that is not written the way it might have been written if it was written here and filed here in the United States to start with? Then as a result, there are lots of little gaps here and there. The district court struggled to try to figure out how to piece this all together. Isn't that the problem here? I disagree with that last statement. It is true that this came from a foreign translation. Then there were some preliminary amendments made. Even the amendment after the office action which really clarified some things such as that the abstract, the only voltage elements are one through five, not the core. For example, there is nothing in the written text of the specification that talks about a core being a complete closed loop so that there would be a magnetic flux. That's not really explicitly discussed. That's not the result of a foreign application coming into the United States. In fact, defendants own invoices. There isn't anything in there that describes that explicitly, correct? No, but my point is that was kind of part of it. I'm not saying that's fatal, but I'm just asking you, isn't it correct that the specification doesn't describe that? It doesn't say we have two portions of a core with coils wrapped around them and that the core is, as everyone would understand, a complete closed loop so that there's a complete magnetic flux that flows. True, that statement is not in the specification. And the problem is because it's not in there, then you sort of look to the drawings to see exactly what the structure is. And you see in Figure 1, there's the bar that Judge Shaw mentioned connecting 7 and 7 prime. But then you look at Figure 3 and you look for the connection on the bottom, the bottom part of the core, and you don't see it. It's missing there. Then you have to say, well, but that drawing is not necessarily engineering-wise accurate, et cetera, et cetera. Your Honor, what's important is that the term cores, reading the specification and claims, is in light of one person of ordinary skill in the art. This is not a problem with errors coming from an application that has gone from Spain to the United States. This is merely how the term is used. Defendant's own expert at the same time of the invention filed his own patent application. That core piece on the bottom connecting 7 and 7 prime is missing from Figure 3, correct? If you were to say that, if you were to assume that that cross-section view is depicting the side flank, if one were to assume that, there's testimony at the time of the mark when it's in the record that persons skilled in the art recognize Figure 3 as demonstrating a very significant part of the invention with regard to the voltage elements. It doesn't impart something that draws one to say that the core is engaged. You're not answering my question. Where is there illustrated in Figure 3 the bottom portion of the magnetic core? It is not. So that's a missing piece that creates some question or ambiguity or something that the district court had to wrestle with to try to... Making certain assumptions of that cross-section line, yes, that would be a missing piece. Now, I think your argument is probably that, well, implicit is a disclosure because the specification talks about in Column 3, for example, line 44 says the transformer of the invention. So the use of the word transformer, you can argue, implicitly discloses a device having a closed magnetic flux loop. Otherwise, it wouldn't be a transformer. And it goes on to say, characterizing the fact that the conventional elements it is comprised of are arranged, et cetera, et cetera. I think that allows one to look as what a person skilled in the art would interpret in reading this. And it's highlighting, Your Honor, what this court has said should not be done at the time of claim destruction, certainly to the point of saying something's inoperable. You must read it in light of the specification and with an understanding towards that which the purpose is directed. This is directed to be a transformer that prevents stray capacitance. It's not inappropriate to ignore that. In fact, it's appropriate to understand that. And hence, it should be a circular ring core. Now, again, had that been at issue at the time of Markman, had we known that core was at issue, which it was not, then I think this wouldn't have gone anywhere. Frankly, at the time of the Markman hearing, the experts wouldn't have been inartful. When they talked about core ring, they would have said core ring. And when they talked about core, the segments such as shown in the claim, that would be clear. What defendants had done was bring an inoperability theory, a 180-degree different theory, than that which maintained throughout the litigation. At the end of the case, after Markman, after the time to amend the contentions, which was scheduled by the pretrial order, after fact discovery, they brought in an inoperability theory that was completely opposite of their own contentions throughout the case, how everybody  And this is including back at the time of early in the case. There was a reexamination request filed. These claims... Your Honor, as you can see, the red light is on. You've consumed your time. We will give you three minutes of rebuttal. Thank you, Your Honor. I think now we have the core of your argument. We'll hear from Mr. Fulton, see what he has to say. Let's see if Mr. Fulton can close the loop. I don't think the patent requires me to, Your Honor. May it please the court. Good morning, Your Honors. I'm Brady Fulton. I'm here on behalf of Blue Ridge X-Ray, DRGEM Corporation, and DRGEM USA, the Apple East in this matter. Your Honors, this court can and should affirm the lower court's judgment for three separate reasons, because there were really three reasons in the record that support the district court's decision. Mr. Rademacher touched on a couple of them, the insulated chambers restriction and the claims. Isn't it implausible that a patent which describes a mechanism such as this is inoperable? People don't write inoperable patents very often. It's true they don't do it very often, Your Honor. But it has happened before, and this court has declared patents invalid under Sections 101 and 112 as inoperable in the Hayman-Eddox versus Baxter Healthcare process control versus HydroClaim and other cases that this court has had. You're right, it doesn't happen very often. But it did happen in this case. The one basis that we briefed to the district court, the district court quoted a part of their expert's testimony about this, but didn't really close the loop on it, Your Honor, is that the claim requires that all of the elements of each group, the claim describes a group of positive voltage elements and a group of negative voltage elements. Those groups of elements, or no, I'm sorry, two differentiated groups, let me read from the claim so I don't get this wrong. It says that the rectifiers, filters, resistive dividers, high voltage switches, and the magnetic cores are arranged in two differentiated groups. The patent then goes on in the last sentence to say, so that at an equal distance from the zero voltage level, that elements of each group have equipotential voltage. And that's very important because clearly under the claim language, the magnetic core is one of those elements of each differentiated group. So by the plain terms, this isn't something that requires any claim construction, but by the plain language of the patent claim, those magnetic cores being elements of the two differentiated groups, the elements of each group have equipotential voltage. And the experts all agreed that if you have a transformer, you cannot have voltage on the magnetic core. The magnetic core, in theory, is supposed to remain at zero voltage. But what this patent claims, and what I believe is figure two of the patent shows, is voltage on the magnetic core. And there's no dispute among the experts. There's no dispute anywhere that a magnetic core with voltage equipotential, in other words, the same as the voltage levels on those other voltage elements, it won't work. But you're reading that claim very, very narrowly, and in a way that would be inconsistent with the way one of ordinary skill in the art would understand the operation of a transformer to be. I mean, the core in a transformer doesn't have any voltage. It's a magnetic element. There's a magnetic field, a flux that flows through the core. And it flows through the core because it's a complete loop. And it has different portions. Everybody knows that. And the patent makes clear, this is a transformer, and it's made of conventional elements arranged in a particular way. I agree with your honor in theory. But as the cases of this court hold, the court's job is not to redraft the claim language. The court's job is also not to read a patent in a way that results in an inoperability conclusion. Your honor, I understand that this court has referred to that as not an axiom of first resort. But if the claim language is clear, which this claim language is, because this claim language very carefully distinguishes out the components of the claimed invention that are voltage elements. And that last line of the claim, it says, so that at an equal distance from zero voltage level, the elements of each group have equipotential voltage. It does not say the voltage elements of each group have equipotential voltage. So whether that's an error, whether that was something because the patent came out of Spain, I don't know. I'm just telling you that if you read the claim exactly as it's written, it's talking about the elements of the two differentiated groups, and says the elements, which includes the magnetic core, must have equipotential voltage. So, your honor, I agree with you in theory. But I think the cases from this court say you can't rewrite the claim language, especially here where there are several instances throughout the claim where the claim does carefully distinguish between something that it calls an element and something that it calls a voltage element. So we don't have this is clearly this is not a model of clarity. The specification is difficult at best. But I just find it difficult to say that the claims can't be read and wouldn't be read by one of ordinary skill in the art in a way that would render it operable. I think if your honor, I think if you do that, you're straying into the area that this court has previously said you cannot do, which is rewriting the language of the claim to preserve. I don't think you have to rewrite anything because the claim can be written, can be understood in a way that renders it operable without rewriting the claim. Because you're talking about there is some ambiguity, but it's not. In other words, the conclusion of inoperability is not the only conclusion that you can draw. Well, I agree, your honor, you can make that argument. But respectfully, it's our position and I think supported by the clear language of the claim that there's a difference between something that's an element of a group and something that's a voltage element of a group. And this claim requires the elements to have equipotential voltage. And your honor, if I could move on to our second contention regarding the meaning of the term magnetic cores in this patent. Setticall's own brief acknowledges, your honor, that magnetic core is what they refer to as a synecdoche. In other words, it's kind of a loose slang word, can mean either a leg, what they call a leg of the magnetic core, or they say it could mean the entire core itself. Let me back up. All the experts agree that the common parlance for referring to a magnetic core is a magnetic core is a continuum, as your honor alluded to, so that the flux can return. The experts agree that the vertical parts, what are typically vertical that have the windings around them, those are referred to as legs of the core, or what I call core legs in the brief. And the part that goes across the top is what is referred to as a yoke that connects the two legs. So you have a magnetic core made up of legs that are wound and yokes that connect. And it's all continuous. Now, synecdoche, a word that they're trying to say that, oh, well, when we said magnetic core, we actually meant the core legs. We didn't really mean an entire magnetic core. Even though the claim says magnetic core, what they told the district court repeatedly was, oh, when we said magnetic core, we didn't really mean a magnetic core. We meant a leg of a magnetic core. And the problem with that interpretation is that it's inconsistent with the specification in several respects. First of all, in the background of the invention, column two of the patent, the inventor identifies a prior art device as having core legs, which is the same thing that Seticol says you should interpret magnetic cores to mean. But then after identifying the prior art device as having core legs, the applicant then goes on to claim not core legs, but magnetic cores. So there's a difference there. And as this court held in the PSC computer case, I acknowledge that's a slightly different context, but I think the rationale is the same. Because that one arose under the doctrine of equivalence. But under the PSC computer case, if an applicant identifies some prior art device, but then does not claim it, claims something different, then the applicant is deemed to have dedicated to the public the prior art device that was not claimed. And in that case, it was a case involving circuits, involving clips that are used in circuits. Dedicate to the public a prior art device. I'm sorry, it was claim coverage, Your Honor. I'm sorry, I misspoke. Thank you for correcting me. Claim coverage. And in that case, the applicant had identified plastic types of clips. But then in his claims, he specifically claimed metallic clips and tried to recapture the plastic clips that had been identified as under the doctrine of equivalence. And this court said, no, you can't do that because you've identified that as being out there, but then you didn't claim it, you claimed something different. And the same rationale applies with this case, is that they identified prior art as including core legs. Then they came to the district court and they said, well, our claim says magnetic core, but really that means core legs. And under the PSC computer's case, they shouldn't be allowed to do that because the inventor has acknowledged a distinction between core legs and magnetic cores. The other thing in the patent is that figure, Sedeco wants magnetic core to mean just the leg. And they say, oh, it just means that part that's wound. It's that one limited part that's wound. But if you look at figure one of the patent, it identifies what are called seven and seven prime. And you see there's a line that's pointing to what we would call the leg over here. And there's a separate line that points to what's called the yoke. So they're using in figure one those numbers to identify the entire magnetic core, the yoke and the legs. But then they come into the court and they say, oh, we just want to limit that to the leg. But that's inconsistent with figure one. That's inconsistent with the reference to the prior art as including core legs and then claiming magnetic cores. So the question here is in this patent, what would one of ordinary skill in the art read and think of as the magnetic core? Is it a complete magnetic core or is it just a leg? And the intrinsic evidence in this case is clear that they distinguished prior art as including core legs and then claimed magnetic cores. The last thing I'll address briefly, Your Honor, because I'm running out of time, is this two insulated chambers. And that limitation was a basis only for non-infringement, not for invalidity. And the district court got this right because if you look at the figures shown in pages 16 to 18 of our brief, they show very clearly that all of these elements on the positive and the negative side reside in a single chamber, not two insulated chambers. There is in those drawings shown, in the accused products shown, a dividing wall. But that wall allows all kinds of space above, below, and around all sides. So that essentially this is one chamber, not two different chambers. And that's what the important disclaimer was in the prosecution history. Prosecution history said they have to be two different chambers. The ordinary meaning of chamber requires something to be enclosed. And obviously if these two enclosures have to be different, they cannot open up to one another like the accused products do. So, Your Honors, I thank you for your time. I respectfully request that you affirm the judgment of the district court. Thank you. Thank you, Mr. Fulton. Mr. Rademacher has three minutes for rebuttal if you need it. Thank you, Your Honor. I'll try to be very brief. First, I want to address the opening argument by the defendant is an argument that was raised in their opposition brief, not part of the appeal. It also was not part of the court's judgment. The court didn't find as it did because the cores supposedly have unequal potential or carry potential. The court rightfully ignored that argument. It's an absurdity and exactly how claims are not to be read to find something which is directly contrary to the specification. But most importantly, I'm going to direct the court's attention. I don't have time to go through it in detail, but page five of our reply brief has a breakdown of the claim, which shows this claim is a whittling down. There are the transformer elements. Certain of those are differentiated into groups. Of those, certain comprise the voltage elements. The latter part of the claim, and this must be read in context, unlike defendants want to do, the latter part of the claim is all dealing with the voltage elements. And it says that the positive and negative voltage elements are arranged in this equal potential arrangement so that those elements, the elements of it. So it's not as counsel is trying to have this court and try to have the district court reference that the latter part, the elements of each group in the last part of the claim should refer to the transformer elements at the top. It must be read in context, as this court has said in its precedent. Judge Lane, you're correct in that the claim construction, which is proffered by defendants in saying that the core must have equal potential gradient, is in fact something that is contrary to what one skilled in the art would understand in reading the specification. And most importantly, I think if we look at cases like marine polymer, it's directly contrary to how this court has said claims must be read. You don't read in an absurdity. With regard to core, I have to clarify, we've put it in our review. I just wanted to highlight that we don't try to read legs into the claim. Actually, we were using the term legs throughout this case. That was defendant's expert. He was asked to talk about why he himself used core as identifying just a segment of a full core ring at a patent application filed around the same time, commencement, with the present patent. And he said, well, that's a leg. That's a segment. So, that did appear in our brief quoting their expert. So, it's a mischaracterization to say that we're trying to read leg into the claim. The patent specification, the 829 patent, is very clear as to what's meant by cores. There are two. There's one associated with the positive, one associated with the negative components. It's shown as 7 and 7 prime. Thankfully, we have the numbers in the claim to direct us to that. But the distinction regarding the prior art in column 2 of the patent was not a distinction saying, oh, the prior art has legs and we don't. That's a mischaracterization for sure. That distinction was distinguishing the Japanese reference for the very same reason all of the other prior art can be distinguished, the serial reference, which is also part of the file history. Rademacher, as you will see, your red light is on, which means your time is up. So, we'll take the case on revision. Thank you.